**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------X   Case No. 1:18-cv-06275 (AJN)
JEANNIE HOLOHAN,

                                        Plaintiff,


                        -against-


NEWMARK & COMPANY REAL ESTATE, INC., and
MERRILL L. ROTH, *individually*,


                                        Defendants.
-------------------------------------------------------------------------X




**MEMORANDUM OF LAW IN OPPOSITION OF DEFENDANTS' MOTION TO
DISMISS**




**PHILLIPS & ASSOCIATES, PLLC**
**45 Broadway, Suite 620**
**New York, New York 10006**
**(212) 248-7431**

*TABLE OF CONTENTS*

*TABLE OF AUTHORITIES* ...................................................................................................... ii

*PRELIMINARY STATEMENT* ...............................................................................................1

*STATEMENT OF RELEVANT FACTS* ................................................................................2

*LEGAL ARGUMENTS* ..............................................................................................................7

I.      Legal   Standard   for   Motions   to   Dismiss   Pursuant   to   FRCP
        12(b)(6) ...........................................................................................................................7

II.     Plaintiff Sufficiently Plead Facts to Establish Viable Claims of Sexual Harassment
        Under Title VII, NYSHRL, and NYCHRL ...................................................................8

        A.      Plaintiff Plead Sufficient Facts for a Hostile Work Environment under Title
                VII or the NYSHRL and Plausibly Alleged that the Hostile Work
                Environment was "Because" of her Sex...............................................................8

        B.      Plaintiff Established a Prima Facie Case of Unlawful Discrimination under the
                NYCHRL ...............................................................................................................13

III.    Plaintiff Sufficiently Plead Facts to Impute Liability onto Defendant Newmark ...... 14

IV.     Plaintiff Sufficiently Pleaded Facts to Establish a Prima Facie Case of Unlawful
        Retaliation......................................................................................................................17

V.      Plaintiff's Aiding and Abetting Claims for the NYCHRL and NYSHRL .................21

VI.     The Court Should Exercise Supplemental Jurisdiction Over any Remaining
        Claims.............................................................................................................................23

*CONCLUSION*............................................................................................................................24

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Davis Polk & Wardwell LLP*, 850 F.Supp. 2d 392 (S.D.N.Y. 2012) ....................... 11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................. 7, 12

*Batten v. Global Contract Servs.*, 2018 U.S. Dist. LEXIS 105327 (E.D.N.Y. 2018) ................. 10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ......................................................................... 7

*Bright-Asante v. Saks & Co., Inc.*, --- F. Supp. 3d ---,  2017 WL 1064890 (S.D.N.Y. Mar. 16, 2017) ............................................................................................................................................ 13

*Crawford v. Metropolitan Government of Nashville and Davidson County, Tenn.,* 555 U.S. 271, 129 S.Ct. 846 (2009) .................................................................................................................... 15

*EEOC v. Suffolk Laundry Servs., Inc.,* 2014 U.S. Dist. LEXIS 139866 (E.D.N.Y. 2014) ........... 12

*Feingold v. New York,* 366 F.3d 138, 158-159 (2d Cir. N.Y. 2004) ............................................. 22

*Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712 (2d Cir. 2010) .............................. 9

*Finnerty v. William H. Sadlier, Inc.,* 176 Fed. Appx. 158, 160 2006 WL 910399 (2d Cir. 2006) . 9

*Goldman v. Belden,* 754 F.2d 1059 (2d Cir. 1985) ....................................................................... 8

*Gorman v. Covidien, LLC, 13* Civ. 6486 (KPF), 2015 U.S. Dist. LEXIS 156689 (S.D.N.Y Nov. 19, 2015) ...................................................................................................................................... 22

*Gorokhovsky v. N.Y.C. Hous. Auth.*, 552 F. App'x 100 (2d Cir. 2014) ....................................... 13

*Gorzynski v. JetBlue Airways Corp.,* 596 F.3d 93 (2d Cir. 2010) ............................................... 15

*Gregory v. Daly*, 243 F.3d 687 (2d Cir. 2001) ............................................................................. 7

*Haggood v. Rubin & Rothman, LLC*, 14-cv-341(SJF)(AKT), 2014 U.S. Dist. LEXIS 161674 (E.D.N.Y. Nov. 17, 2014) .............................................................................................................. 8

*Hall v. New York City Dept. of Transp.,* 701 F.Supp.2d 318 (E.D.N.Y., 2010) ........................... 15

*Harris v. Forklift Sys., Inc.,* 510 U.S. 17 (1993) ......................................................................... 14

*Hill v. Citibank Corp.,* 312 F.Supp.2d 464 (S.D.N.Y. 2004) ....................................................... 18

*Houston v. Fidelity*, 1997 U.S. Dist. LEXIS 2366 (S.D.N.Y. Mar. 4, 1997) ............................... 23

*Johnson v. J. Walter Thompson U.S.A., LLC*, 224 F. Supp. 3d 296 (S.D.N.Y. 2016).................. 13

*Joyner v. City of N.Y.,* 2012 U.S. Dist. LEXIS 146787 (S.D.N.Y. Oct. 10, 2012)....................... 16

*Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229 (2d Cir. 2007) ............................................. 7

*Kaytor v. Elec. Boat Corp.,* 609 F.3d 537 (2d Cir. 2010)........................................................ 11, 13

*Kellman v. Metro. Transp. Auth.*, 8 F. Supp. 3d 351 (S.D.N.Y. 2014)......................................... 13

*Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs*, 716 F.3d 10 (2d Cir. 2013).............. 12

*Langford v. International Union of Operating Engineers, Local 30,* 765 F.Supp.2d 486 (S.D.N.Y. 2011) .................................................................................................................................................. 15

*Leopold v. Baccarat, Inc.,* 239 F.3d 243 (2d Cir. 2001) ............................................................... 16

*Levitant v. City of N.Y. Human Res. Admin.,* 625 F. Supp. 2d 85 (E.D.N.Y. 2008).................... 10

*Littlejohn v. City of New York,* 795 F.3d 297 (2d Cir. 2015)....................................................... 14

*Lynch v. New York State Urban Dev. Corp.*, 2018 U.S. Dist. LEXIS 136675 (E.D.N.Y 2018) .. 20

*Mack v. Otis Elevator Co.,* 326 F.3d 116 (2d. Cir. 2003) ............................................................... 9

*Malena v. Victoria's Secret Direct*, LLC, 886 F.Supp.2d 349 (S.D.N.Y. 2012)......................... 23

*Medcalf v. Thompson Hine LLP*, 84 F. Supp. 3d 313 (S.D.N.Y. 2015) ....................................... 13

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102 (2d Cir. 2013)................ 13, 19

*Pa. State Police v. Suders*, 542 U.S. 129 (2004) ........................................................................... 9

*Parrish v. Sollecito*, 258 F.Supp.2d 264 (S.D.N.Y. 2003).......................................................... 18

*Perks v. Town of Huntington*, 251 F. Supp. 2d 1143 (E.D.N.Y. 2003) ........................................ 21

*Perry v. Ethan Allen, Inc.,* 115 F.3d 143 (2d Cir. 1997)............................................................. 14

*Pucino v. Verizon Commc'ns, Inc.* 618 F.3d 112 (2d Cir. 2010).................................................. 12

*Quinn v. Green Tree Credit Corp.,* 159 F.3d 759 (2d. Cir. 1998) ............................................... 19

*Rodriguez v. Express World Wide, LLC*, No. 12 CV 4572 (RJD)(RML), 2014 U.S. Dist. LEXIS 47978 (E.D.N.Y. Jan. 16, 2014) ................................................................................................... 21

*Rojas v. Roman Catholic Diocese of Rochester,* 660 F.3d 98 (2d Cir. 2011)............................... 22

*Salvatore v. KLM Royal Dutch Airlines*, No. CIV.A.98-2450-LAP, 1999 U.S. Dist. LEXIS 15551 (S.D.N.Y Sep. 30, 1999) ........................................................................................................... 21

*Scheiner v. N.Y.C. Health & Hosps.,* 152 F.Supp.2d 487 (S.D.N.Y. 2001) ................................. 19

*Schiano v. Quality Payroll Systems, Inc.*, 445 F.3d 597 (2d Cir. 2006) ....................................... 21

*Schwapp v. Town of Avon*, 118 F.3d 106 (2d Cir. 1997) ............................................................. 10

*Silverman v. Miranda*, 116 F. Supp. 3d 289 (S.D.N.Y. 2015) ..................................................... 23

*Six W. Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp.*, 97 Civ. 5499, 2000 U.S. Dist. LEXIS 2604 (S.D.N.Y. Mar. 9, 2000) ............................................................................................ 7

*Sowemimo v. D.A.O.R. Sec., Inc.,* 43 F. Supp. 2d 477 (S.D.N.Y. 1999) ...................................... 12

*Stofsky v. Pawling Cent. School Dist.,* 635 F.Supp.2d 272 (S.D.N.Y. 2009) .............................. 15

*Summa v. Hofstra Univ.*, 708 F.3d 115 (2d Cir. 2013) .......................................................... 8, 19

*Swierkiewicz v. Sorema N. A.,* 534 U.S. 506 (2002) ................................................................... 14

*Terry v. Ashcroft*, 336 F.3d 128 (2d Cir. 2003) ......................................................................... 12

*Vance v. Ball State Univ.*, 133 S. Ct. 2434 (2013) ........................................................................ 8

*Vega v. Hempstead Union Free Sch. Dist.,* 801 F.3d 72 (2d Cir. 2015) ...................................... 14

*Whidbee v. Garzarelli Food Specialties, Inc.,* 223 F.3d 62 (2d Cir. 2000) ................................. 12

*White v. Department of Correctional Services,* 2011 WL 4527320 (S.D.N.Y. 2011) ................ 18

*Williams v. New York City Hous. Auth.*, 61 A.D.3d 62 (N.Y. App. Div. 2009) .......................... 13

*Williams v. New York City Hous. Auth.*, 872 N.Y.S.2d 27 (N.Y. App. Div. 2009)............... 13, 19

*Zakrzewska v. New School,* 14 N.Y.3d 469, 928 N.E.2d 1035, 902 N.Y.S.2d 838 (2010) .......... 16

*Zakrzewska v. New School*, 598 F. Supp. 2d 426 (S.D.N.Y 2009) ............................................... 16

*Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834 (2d Cir. 2013).................................................. 18

**Statutes**

28 U.S.C. § 1367 ........................................................................................................................... 23

42 U.S.C. § 2000e ........................................................................................................................... 1

42 U.S.C. § 2000e-17....................................................................................................................... 1

N.Y.C. Admin. Code § 8-107…………………………………………….……1, 16, 19, 21, 22

NYS Executive Law § 296 ........................................................................................... 1

**_Other Authorities_**

FRCP 12(b)(6) ....................................................................................................... 1, 7

*PRELIMINARY STATEMENT*

Plaintiff Jeannie Holohan ("Plaintiff" or "Holohan") respectfully submits this memorandum of law in opposition to the respective motion to dismiss made by Defendants Newmark & Company Real Estate, Inc. ("Defendant Newmark"), and Merrill Roth ("Defendant Roth") (together, "Defendants"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP").

Plaintiff brought claims against Defendants alleging violations of Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978, and by the Civil Rights Act of 1991, Pub. L. No. 102-166) ("Title VII"), the New York State Human Rights Law, NYS Executive Law § 296, et. seq. ("NYSHRL"), and the New York City Human Rights Law, New York City Administrative Code, § 8-107, *et seq.* ("NYCHRL"). Specifically, Plaintiff alleges that she was sexually harassed and subjected to an unlawful hostile work environment on the basis of her sex (female), and subjected to unlawful retaliation when she was terminated for complaining about the sexual harassment.

The hostile work environment at issue took the form of severe and pervasive sexually harassing comments and touching's that were made by Defendant Roth, Plaintiff's supervisor. Plaintiff perceived these comments to be offensive and as plead they are objectively offensive. Moreover, the retaliation in this matter is clear. After Plaintiff complained about the sexual harassment on November 28, 2017, she was terminated eight (8) days later. In light of this, it is evident that Plaintiff has met her burden at the pleading stage and Defendants' motion should be denied in its entirety.

Moreover, Defendants' motion more closely mirrors a motion for summary judgment than that of a motion to dismiss; asking the Court to dismiss Plaintiff's claims based on an inability to

1

meet the applicable standards under the law rather than a deficient pleading.  Defendants brief is unnecessarily delaying this action and needlessly increasing the costs of litigation.    As such, Plaintiff respectfully requests that Defendants' motion be denied in its entirety.

### STATEMENT OF RELEVANT FACTS

On or about November 7, 2016, Plaintiff began her employment with Defendant Newmark, as a "Temporary Administrative Assistant," through Access Staffing. Plaintiff was earning a rate of $25.00 per hour.  (Comp. ¶ 14).  On or about March 20, 2017, Plaintiff began her employment with Defendant Newmark, earning a salary of approximately $60,008.00 per year, as an "Administrative Assistant." (Comp. ¶ 15).  Plaintiff worked with Defendant Roth who was employed by Defendant Newmark as the "Vice-Chairman." (Comp. ¶ 11).  Defendant Roth was Plaintiff's supervisor and/or had supervisory authority over Plaintiff. Defendant Roth had the authority to hire, fire or affect the terms and conditions of Plaintiff's employment. (Comp. ¶ 12).

Starting as early as June 1, 2017, Plaintiff was subjected to unlawful sexual harassment at the hands of Defendant Roth.  On or about June 1, 2017, Defendant Roth e-mailed Plaintiff about a notepad she left in his office a few days prior. Defendant ROTH told Plaintiff, "U left your pad in my office Tuesday. Is there a reward :-)?" Plaintiff responded, "Not a bounty :) Funny!" (Comp. ¶ 18).  Plaintiff was taken aback and took this as a sexually suggestive comment. (Comp. ¶ 19).

In or around mid-June 2017, a fellow co-worker told Plaintiff that her attire may not adhere to the summer dress code.  As such, Plaintiff decided to purchase a different pair of pants. Upon her return from the store, Defendant Roth told Plaintiff to come into his office and then looked at Plaintiff up and down. He then suggestively told Plaintiff, "I have no problem with what I see at all." (Comp. ¶ 20-22).

Defendant Roth's sexually harassing conduct did not stop there.  In fact, Defendant Roth

would find a reason to be near Plaintiff on a number of occasions. Between in or around the end of July 2017 through in or round the beginning of August 2017, Defendant Roth required Plaintiff to come into his office and sit directly next to him to review and make edits to a presentation. (Comp. ¶ 29).   On one occasion, Defendant Roth intentionally leaned in towards Plaintiff, as he reached for various items on his desk, while reviewing the project with Plaintiff. (Comp. ¶ 30). On another occasion, Plaintiff corrected Defendant Roth on an error. In response, he grabbed the paper from Plaintiff and told her, "You think you're so smart, don't you? I wonder what else you are good at?"  Plaintiff took this comment as an unwanted and unlawful sexual advance. (Comp. ¶ 31-32).

One of the most offensive and hostile situations for Plaintiff took place on or about August 8, 2017.  On this day Plaintiff was again in Defendant Roth's office reviewing a project. While reviewing the project, Defendant Roth's hand brushed against Plaintiff's thigh. In response, Plaintiff immediately moved away. (Comp. ¶ 33).   Then Defendant Roth proceeded to lean in towards Plaintiff and say, "You know I'm not a sexual monster. But my wife thinks I am." (Comp. ¶ 34).  Plaintiff took this comment as an unwanted and unlawful sexual advance. (Comp. ¶ 35). Immediately after, Plaintiff felt Defendant Roth inching towards her, as she pulled away. Plaintiff was unsure of what to do, so she made up an excuse, saying she had to go to the bathroom, in order to get away from Defendant Roth. (Comp. ¶ 36).   While Plaintiff was trying to get out of the office, Defendant Roth told Plaintiff, "You know I understand women well." (Comp. ¶ 37). Plaintiff was taken aback and took it as a sexually suggestive comment. (Comp. ¶ 38).

After Plaintiff denied Defendant Roth's sexual advances, he began to make her work environment extremely difficult and would find reasons to discipline her.  For example, on or about Thursday, August 10, 2017, Plaintiff provided Defendant Roth with a hard copy of a presentation

3

she was working on for him. (the "August Project"). (Comp. ¶ 39).   On or about Friday, August 11, 2017, Plaintiff informed Defendant Roth that the charts in the presentation were only templates and only for placement purposes. (Comp. ¶ 40).   That weekend Plaintiff became ill with gastroenteritis.   Plaintiff went to the emergency room on Monday, August 14, 2017 and was ordered by her doctor to remain home until August 17, 2017.   (Comp. ¶ 41-42).   Plaintiff immediately informed Defendants of this information.   (Comp. ¶ 44).   However, upon her return to work, Plaintiff was accused by Ms. Roberts of not providing Defendant Roth with the proper documents needed for him to review prior to her being out sick and for not following proper procedures for larger projects.   (Comp. ¶ 40).   Plaintiff was then called a "smartass" by Ms. Roberts.   Soon thereafter, there were a number of e-mail exchanges confirming and showing proof that Plaintiff had completed her assignment on time. (Comp. ¶ 55).

By way of further example, on or about October 16, 2017, Plaintiff came in to work to find e-mails, dated Sunday, October 15, 2017, from Defendant Roth, about the exact documents Plaintiff had already sent him. (Comp. ¶ 81).   In response, Plaintiff e-mailed Defendant ROTH informing him that she had already sent him the document and that she does not have any access to e-mails over the weekend. Plaintiff also forwarded the original e-mail to Defendant Roth. (Comp. ¶ 82).   Soon after, Plaintiff e-mailed Ms. Roberts explaining the continuing issues she was having with Defendant Roth. (Comp. ¶ 83).   Approximately a half hour later, Defendant Roth e-mailed Plaintiff claiming that he could not get in touch with her. Plaintiff responded, by e-mail, that she was working on the photos and would call him before 10 a.m. (Comp. ¶ 84).   However, despite calling Defendant ROTH before 10 a.m., he did not pick up. Plaintiff immediately followed up her missed calls with an e-mail. (Comp. ¶ 85).

Soon thereafter, Plaintiff heard Ms. Roberts yelling her name. Ms. Roberts began scolding

Plaintiff for sending her so many e-mails and told Plaintiff to stop messing up the project. (Comp. ¶ 86). Upon returning to her desk, Plaintiff sent Ms. Roberts a detailed e-mail explaining what had transpired between her and Defendant Roth, including the fact that he did not read any of the e-mails she had sent him. (Comp. ¶ 87). Between on or about October 16, 2017 and on or about October 19, 2017, Defendant Roth continued to harass Plaintiff over mistakes that he was actually making. (Comp. ¶ 88).

In a further example to demonstrate Roth's change of attitude towards Plaintiff after she denied his sexual advances, Plaintiff was issued a written warning by Defendant Roth on or about November 21, 2017, for failing to complete the October project. (Comp. ¶ 92, 95). In addition, the written warning mentioned Plaintiff's attitude, insubordinate behavior, making Defendant Roth come out of his office to get Plaintiff, and getting into an alleged altercation with him on the main office floor, leading to his embarrassment. (Comp. ¶ 93). As Plaintiff was reading the written warning, Plaintiff looked up to find Defendant Roth smirking. (Comp. ¶ 94). Once Defendant Roth and Mr. Emden left, Ms. Roberts told Plaintiff that she knows at least 50% of the statements in the written warning were true. (Comp. ¶ 95). That evening, Plaintiff sent an e-mail to the Defendants main Human Resources office, in California, requesting a transfer from working with Defendant Roth. (Comp. ¶ 96).

On or about November 27, 2017, feeling physically and mentally unable to deal with the hostile work environment, Plaintiff e-mailed Ms. Roberts, Ms. Davis, and Ms. Sukumar, about not being able to come into work. (Comp. ¶ 103). On or about November 28, 2017, Plaintiff had a meeting with Ms. Sukumar and Ms. Davis, about Defendant ROTH's unlawful sexual harassment. (Comp. ¶ 104). Plaintiff specifically identified: (1) when Defendant ROTH asked if there was a reward for finding Plaintiff's notepad; (2) when Defendant ROTH looked Plaintiff up and down,

when she told him she was going to go buy a proper pair of pants for work; and (3) the multiple comments about him wanting to sit next to her. (Comp. ¶ 105).  Plaintiff also explained that because she did not acquiesce to his conduct, all the projects she was working on began having multiple errors.  (Comp. ¶ 106).  Ms. Davis told Plaintiff that she had to talk to legal about where Plaintiff would have to go be reassigned. (Comp. ¶ 107).

On or about November 30, 2017, Plaintiff had a continuation meeting with Ms. Davis and Ms. Sukumar.  During this meeting, Ms. Davis informed Plaintiff that Defendant ROTH, Mr. Emden, and Ms. Richards, would not be involved in the process.  (Comp. ¶ 108).  Plaintiff also went into details about all of the instances where Defendant ROTH retaliated against her for not acquiescing to his sexual harassment. This included going into detail about: (1) what she meant by "sexual monster"; (2) how Defendant ROTH told her that he "understands women"; (3) Defendant ROTH forcing her to sit directly next to him, in particular when they were review the project from August and Defendant ROTH touching her thigh in the process; and (4) Defendant ROTH leaning in towards her.  (Comp. ¶ 109).

Plaintiff continued that the environment was abusive because she was not acquiescing to Defendant ROTH's unlawful conduct. In addition, Plaintiff clarified that the conduct was sexually suggestive, rather than Defendant ROTH explicitly flirting with her. (Comp. ¶ 110).  Ms. Davis told Plaintiff that the other administrative assistants support five (5) to six (6) brokers. In response, Plaintiff asked, "Are they [Defendant ROTH and Mr. Emden] that difficult to work with that no one else wants them? I can handle five to six brokers with no problem. I managed a group of 25 brokers in Nomura."  (Comp. ¶ 111).  Towards the end of the conversation, Ms. Davis asked Plaintiff about what she wanted to do. Plaintiff agreed that she wanted to work in another department, other than the Brokerage Department. However, Plaintiff took this back because she

felt that the hostile work environment would not change. Ms. Davis acknowledged that the brokers "talk." (Comp. ¶ 112).

As of November 30, 2017, Plaintiff had not received any updates about the investigation, nor a copy of the November 21st Written Warning. (Comp. ¶ 113). On December 6, 2017, Plaintiff was terminated from her position in retaliation for complaining of sexual harassment. (Comp. ¶ 114).

### *LEGAL ARGUMENTS*

### I.      **Legal Standard for Motions to Dismiss Pursuant to FRCP 12(b)(6).**

When deciding a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court "must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally." *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001) (citation omitted); *See Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 237 (2d Cir. 2007)). Nevertheless, a plaintiff's factual allegations "must be enough to raise a right of relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). If she has not nudged her claims across the line from conceivable to plausible, her complaint must be dismissed. *Id.* at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (applying the *Twombly* standard to "all civil actions," including discrimination suits). When the Court undertakes review of the pleadings on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), "a court looks only to the four corners of the complaint and evaluates the legal viability of the allegations contained therein." *Six W. Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp.*, 97 Civ. 5499, 2000 U.S. Dist. LEXIS 2604, at *12 (S.D.N.Y. Mar. 9, 2000). The Court's function on a motion to dismiss is "not to weigh the

evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir. 1985).

Plaintiff Holohan alleges in her complaint that she was the subject of a sexually based hostile work environment and that eight days after she complained about the sexual harassment she was terminated.   Therefore, Plaintiff's complaint, taken as true for the purposes of this motion, sufficiently alleges facts to establish the existence of a sexual harassment claim and retaliation under Title VII, NYSHRL, and NYCHRL.

## II.   Plaintiff Sufficiently Plead Facts to Establish Viable Claims of Sexual Harassment Under Title VII, NYSHRL, and NYCHRL.

### A.   Plaintiff Plead Sufficient Facts for a Hostile Work Environment under Title VII or the NYSHRL and Plausibly Alleged that the Hostile Work Environment was "Because" of her Sex.

Taking Holohan's allegations as true, and viewing them in the light most favorable to her, the Complaint clearly states a claim for relief under Title VII and the NYSHRL.

"Title VII prohibits the creation of a hostile work environment." *Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2441 (2013).  "In order to prevail on a hostile work environment claim, a plaintiff must make two showings: (1) that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment and (2) that there is a specific basis for imputing the conduct creating the hostile work environment to the employer." *Summa v. Hofstra Univ.*, 708 F.3d 115, 124 (2d Cir. 2013) (quotation omitted); *See Haggood v. Rubin & Rothman, LLC*, 14-cv-341(SJF)(AKT), 2014 U.S. Dist. LEXIS 161674, at *43 (E.D.N.Y. Nov. 17, 2014).

In order to establish a hostile work environment claim, "the plaintiff must show that the work environment was so pervaded by discrimination that the terms and conditions of employment were altered." *Vance*, 133 S. Ct. at 2441; *See also Fincher v. Depository Trust & Clearing Corp.*,

604 F.3d 712, 723-24 (2d Cir. 2010) ("In order to establish a hostile work environment claim … a plaintiff must show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered.") (quotations and citation omitted)).  To prevail on a hostile work environment claim, under Title VII and NYSHRL, "a Claimant claiming [she] was the victim of an unlawful hostile work environment must elicit evidence from which a reasonable trier of fact could conclude . . . 'that the workplace was permeated with discriminatory intimidation that was sufficiently severe **or** pervasive to alter the conditions of his or her work environment . . .'" *Finnerty v. William H. Sadlier, Inc.,* 176 Fed. Appx. 158, 160 2006 WL 910399, 1 (2d Cir. 2006) (*quoting Mack v. Otis Elevator Co.,* 326 F.3d 116 (2d. Cir. 2003). The Supreme Court's standard is disjunctive, requiring the harassment to be either "severe **or** pervasive (not severe and pervasive)." *Pa. State Police v. Suders*, 542 U.S. 129, 133 (2004) (emphasis added); *Morgan*, 536 U.S. at 116.

In Sections II(A) of Defendant's Memorandum of Law, Defendants assert that Plaintiff failed to plead actionable harassment under Title VII and the NYSHRL since Holohan has not plausibly alleged conduct that was objectively "severe" or "pervasive". These assertions (singularly and together) fail.  The complaint plausibly alleges a number of instances, when viewed in their totality, would support a finding that Plaintiff Holohan subjectively perceived Roth's conduct as hostile and offensive (Comp. ¶ 19, 32, 35, 38, 106, 110); and viewed in the light most favorable to her, a reasonable person could consider his conduct to describe a hostile work environment under the severe or pervasive standard under Title VII.  The Complaint describes a number of examples of Roth deliberately using double entendres both with sexually risqué interpretations.  The hostile work environment is further bolstered by Roth's overt sexual comments about being a "sexual monster" and culminated by the unwanted touching of Plaintiff's

thigh (Comp. ¶ 33-34).  Despite Plaintiff's objection, Defendant Roth inched closer to tell Plaintiff, "You know I understand women well."   (Comp. ¶ 37). All of this supports a finding of plausible severe or pervasive conduct at the pleading stage.

Consider *Batten v. Global Contract Servs*., 2018 U.S. Dist. LEXIS 105327, at 14 (E.D.N.Y. 2018). The court in *Batten*, denied <u>summary judgment</u> for Plaintiff's hostile work environment claim when the hostile work environment involved a single incident of sexual harassment.  In that case, the defendant entered the Plaintiff's cubicle and grabbed the Plaintiff from behind, squeezed her, and pressed his cheek to her cheek for no more than seconds.  There the court reasoned that a jury could find that this behavior created an objectively and subjectively offensive hostile work environment.  *Id*. In that case, the Court was reviewing those specific facts even under the higher standard at summary judgment and found this single at of an unwanted touching to meet the threshold of the severe or pervasive standard. Here, we have the touching of a more intimate body part (a thigh) in comparison to a hug cheek to cheek. Using the same reasoning as in Batten, the facts as plead in this case would suffice as to establish the necessary level of severity.

When determining whether an environment is sufficiently hostile to constitute a hostile work environment, "[t]here is no magic threshold number of harassing incidents that are required... to demonstrate a…hostile work environment. Rather, a hostile work environment is determined by all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Levitant v. City of N.Y. Human Res. Admin.,* 625 F. Supp. 2d 85, 100 (E.D.N.Y. 2008). Hostile work environments are often demonstrated through the culmination of many actions and courts must "consider the totality of the circumstances." *Schwapp v. Town of Avon*, 118 F.3d 106, 111 (2d Cir. 1997). Often times a

crucial factor in determining whether the work environment was sufficiently harsh is determining the "effect on the employee's psychological well-being." *Kaytor v. Elec. Boat Corp.,* 609 F.3d 537, 547-48 (2d Cir. 2010).

Moreover, to this point, Defendants reliance on *Anderson v. Davis Polk & Wardwell LLP*, 850 F.Supp. 2d 392 (S.D.N.Y. 2012), is misplaced.  In that case, the Court dismissed the Plaintiff's sexual harassment claims when the Plaintiff alleged that the Defendant would come around his cube on occasions and "place her vagina" on his left shoulder or inches from his face.  The Court reasoned that from an objective perspective the conduct fell short of what would be severe or pervasive because the court found that these allegations, "at most support the inference that on some occasions…[defendant] had reason to visit him in his cubicle…. [and] stood too close to plaintiff." *Id*. At 15. The facts of that case are distinguishable to the facts here.  Specifically, *Anderson*, does not have any allegations of an actual touching. In addition, the facts in this case are more frequent and taken in their totality reveal that Defendant Roth was harassing Plaintiff because of her gender.  In fact, the notepad incident, the dress code incident, the frequent attempts to be near Plaintiff, and the comment, "You think you're so smart, don't you? I wonder what else you are good at?" are all better explained when taken in the totality.  Defendant Roth, in more ways than one made his intentions known to Plaintiff and for the avoidance of doubt, overtly declared himself a "sexual monster" and as someone who "knew women". The real motive behind those acts are elucidated by Defendant Roth's "sexual monster" comment and touching of her thigh.  All of these incidents, taken in their totality, are plead such that objectively Defendant Roth was sexually harassing Plaintiff.

Defendant Roth also made several attempts to lean towards Plaintiff (Comp. ¶ 30, 36) and on one instance even brushed his hand against Plaintiff's thigh. (Comp. ¶ 33).   As such, the courts

have held that not only is unwanted touching of a woman's body parts a traumatic and demeaning experience for the woman, but the law itself deems unwanted touching to be a "highly significant factor contributing to a hostile work environment." *EEOC v. Suffolk Laundry Servs., Inc.,* 2014 U.S. Dist. LEXIS 139866, at \*40 (E.D.N.Y. 2014) (*citing Sowemimo v. D.A.O.R. Sec., Inc.,* 43 F. Supp. 2d 477, 484 -85 (S.D.N.Y. 1999). The Second Circuit has also "repeatedly cautioned against setting the bar [for a hostile work environment claim] too high, noting that while a mild, isolated incident does not make a work environment hostile, the test is whether the harassment is of such quality or quantity that a reasonable employee would find the conditions of his employment altered for the worse." *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003) (internal quotations omitted) (*citing Whidbee v. Garzarelli Food Specialties, Inc.,* 223 F.3d 62, 70 (2d Cir. 2000)).

In Section IIB, Defendants also contend that Plaintiff fails to plausibly allege that the hostile work environment was "because of her sex". In order to state a discriminatory hostile work environment claim, the plaintiff must allege "factual circumstances that permit the inference that the plaintiff was subjected to a hostile work environment because of her protected characteristic." *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs*, 716 F.3d 10, 14 (2d Cir. 2013).

Moreover, the Second Circuit has established that "incidents that are facially gender neutral may sometimes be used to establish a course of sex-based discrimination—for example, where the same individual is accused of multiple acts of harassment, some overtly sexual and some not." *Pucino v. Verizon Commc'ns, Inc*. 618 F.3d 112, 118-19 (2d Cir. 2010). So, while some incidents may not "directly amount" to sex discrimination "when considered alone in isolation, an inference that such conduct was gender-based could be drawn" given evidence of other sex- based conduct. *Id* at 119. To that end, alleging some "overtly sexual comments" can be sufficient for a court to conclude that other "facially gender-neutral threats…were, in fact, 'because of…sex." *Kaytor v.*

12

*Elec. Boat Corp.*, 609 F.3d 537, 549 (2nd Cir 2010). *See Johnson v. J. Walter Thompson U.S.A., LLC*, 224 F. Supp. 3d 296 at 25 (S.D.N.Y. 2016) ("The totality of Martinez's alleged conduct, both overtly sex based or sexual and not, can be read as a campaign to assert power over Johnson—to sexualize her, to demean her, to professionally diminish her, and to deprive her of bodily security— because of her sex. Johnson's Title VII hostile work environment claim therefore survives the motion to dismiss"). Again, when looking at the totality of the conduct and particularly considering the repeated sexual innuendos, the touching of Plaintiff's thigh with Defendant Roth commenting that he is "not a sexual monster", Defendant's Roth conduct when viewed in its entirety was done because of Plaintiff's sex.

**B. Plaintiff Established a *Prima Facie* Case of Unlawful Discrimination under the NYCHRL.**

To state a claim for gender discrimination under the NYCHRL, a plaintiff need only demonstrate "differential treatment — that she is treated 'less well' — because of a discriminatory intent." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc*., 715 F.3d 102, 110 (2d Cir. 2013) (quoting *Williams v. New York City Hous. Auth.*, 61 A.D.3d 62 [N.Y. App. Div. 2009]); *Gorokhovsky v. N.Y.C. Hous. Auth*., 552 F. App'x 100, 102 (2d Cir. 2014); *Medcalf v. Thompson Hine LLP*, 84 F. Supp. 3d 313, 329 (S.D.N.Y. 2015); *Bright-Asante v. Saks & Co., Inc.*, --- F. Supp. 3d ---, ---, 2017 WL 1064890, at *8 (S.D.N.Y. Mar. 16, 2017). A plaintiff only needs to allege that she was treated "differently from others in a way that was more than trivial, insubstantial, or petty." *Medcalf*, 84 F. Supp. 3d at 329 n.18 (citing *Kellman v. Metro. Transp. Auth*., 8 F. Supp. 3d 351, 379 [S.D.N.Y. 2014]). Thus, employers may only avoid liability under the NYCHRL for conduct that results in an employee being treated "less well" because of her gender, when the conduct complained of constitutes nothing more than "'petty slights and trivial inconveniences,'" *Id*. at 111 (quoting *Williams*, 872 N.Y.S.2d at 41).

Courts have even found that the NYCHRL's requirement of discrimination "because of" gender can be satisfied by allegations of entirely non-physical work interactions with sexual content or undertones. *See, e.g., Bermudez*, 783 F. Supp. 2d at 588 (denying motion to dismiss hostile work environment claim under the NYCHRL regarding "comments," the "majority of [which] were sexual in nature," that made a female coworker uncomfortable). Here, the allegations in Plaintiff's Complaint support the inference that Roth's conduct was motivated by Plaintiff's gender. Any reasonable observer, if asked what motivated these encounters, would almost certainly answer that the Roth's actions were prompted by Plaintiff's gender. And it is to be reminded that "an employment discrimination plaintiff need not plead a prima facie case of discrimination" to survive at the motion-to-dismiss stage. *Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 515 (2002); accord *Vega v. Hempstead Union Free Sch. Dist.,* 801 F.3d 72, 84 (2d Cir. 2015); *Littlejohn v. City of New York,* 795 F.3d 297, 311 (2d Cir. 2015). As such, because Plaintiff has plead sufficient facts that her hostile work environment have met the bar of the higher standard of being both severe and pervasive, this Court should also find that Plaintiff has plead enough facts regarding her claims under the lower standard of the NYCHRL.

## III.    Plaintiff Sufficiently Plead Facts to Impute Liability onto Defendant Newmark.

As it relates to Plaintiff's Title VII and NYSHRL claims, after a plaintiff establishes that the misconduct was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment," *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993), a plaintiff must establish that "a specific basis exists for imputing the conduct that created the hostile work environment to the employer." *Perry v. Ethan Allen, Inc.,* 115 F.3d 143, 149 (2d Cir. 1997).

When an alleged harasser is in a supervisory position over an employee, the objectionable

conduct is automatically imputed to the employer for purposes of asserting a hostile work environment claim. *Gorzynski v. JetBlue Airways Corp.,* 596 F.3d 93 (2d Cir. 2010). Moreover, when a supervisor's behavior culminates in a tangible (adverse) employment action (like a termination) against the employee, there are no affirmative defenses available to the employer, and the employer will be vicariously and strictly liable. *Langford v. International Union of Operating Engineers, Local 30,* 765 F.Supp.2d 486 (S.D.N.Y. 2011); *See also, Stofsky v. Pawling Cent. School Dist.,* 635 F.Supp.2d 272, 295 (S.D.N.Y. 2009) ("[n]o affirmative defense is available … when the supervisor's harassment culminates in a tangible employment action"); *Crawford v. Metropolitan Government of Nashville and Davidson County, Tenn.,* 555 U.S. 271, 278, 129 S.Ct. 846, 852 (2009) ("there is no affirmative defense if the hostile environment culminates in a tangible employment action against the employee"). This prong is properly plead in that Plaintiff Holohan was terminated.   See, *Hall v. New York City Dept. of Transp.,* 701 F.Supp.2d 318 (E.D.N.Y., 2010). ("A tangible employment action, attributing harassment to supervisor, requires an act which the employer ratified or approved, and is therefore limited to significant changes in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.")

In addition, to obtain the benefit of the *Faragher/Ellerth* affirmative defense, the employer must show '(a) that [it] exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.' Ellerth, 524 U.S. at 765 (emphasis added). The defendant bears the burden of persuasion on both elements, but, with respect to the second one, if the defendant can demonstrate that the plaintiff 'has completely failed to avail herself of the complaint procedure, the burden of production shifts

to the employee to come forward with one or more reasons why the employee did not make use of the procedures. The employer may rely upon the absence or inadequacy of such a justification in carrying its ultimate burden of persuasion.' *Leopold v. Baccarat, Inc.,* 239 F.3d 243, 246 (2d Cir. 2001)." *Joyner v. City of N.Y.,* 2012 U.S. Dist. LEXIS 146787, *6 (S.D.N.Y. Oct. 10, 2012). Though not necessary to note at the pleading stage, neither of these elements are present here. Plaintiff's initial objections to the sexual harassment were met with encouragement to make Defendant Roth "happy". Defendants did nothing to prevent or correct the behavior. In addition, Plaintiff made a complaint regarding the sexual harassment in accordance with Defendants' policies. (Comp ¶ 104).

Under the NYCHRL, employers are strictly liable for the unlawful harassment by a supervisor or manager, regardless of whether it culminated in a tangible employment action. As the New York Court of Appeals held, "[t]he plain language of § 8-107 . . . creates vicarious liability for the acts of managerial and supervisory employees even where the employer has exercised reasonable care to prevent and correct any discriminatory actions and even where the aggrieved employee unreasonably has failed to take advantage of employer - offered corrective opportunities." *Zakrzewska v. New School,* 14 N.Y.3d 469, 478, 928 N.E.2d 1035, 1038, 902 N.Y.S.2d 838, 841 (2010) (*quoting Zakrzewska v. New School*, 598 F. Supp. 2d 426, 434-36 (S.D.N.Y 2009)); see also NYCHRL §8-107(13)(b)(1)("[a]n employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee . . . where the employee or agent exercised managerial or supervisory responsibility").

Plaintiff has plead that Defendant Roth was Plaintiff's supervisor and had supervisory authority over her such that he had the authority to hire, fire, or affects the terms of her employment. (Comp. ¶ 12).  She has also plead that Defendant Roth subjected her to sexually

charged comments (Comp. ¶18, 22, 31, 34, 37) that were offensive and unwanted sexual touching's (Comp. ¶ 33).  As such, Plaintiff's Complaint sufficiently pleads a plausible theory of liability under the NYCHRL.

Plaintiff has also plead that she suffered an adverse employment action since she was terminated (Comp 114).  In direct contradiction to this, Defendants' brief makes a blanket statement that Plaintiff has not suffered any adverse employment action (Defs' brief page 16). Defendants' brief also alleges that Plaintiff did not plead that Defendant Roth had the power to take tangible employment action against Plaintiff but this is also untrue. (See Comp. ¶ 12).  In light of this, the allegations as plead suffice under the Iqbal standard to support a plausible theory of liability against Defendant Newmark for the acts of Defendant Roth under all statutes.

Defendants also argue that Plaintiff complained about the sexual harassment only after she received a negative evaluation. As a preliminary matter, this analysis is completely inappropriate in determining if Defendant Roth's conduct can be legally imputed onto Defendant Newmark. Defendants' theories regarding the timing of Plaintiff's complaint and alternative motivations for her objections, are ones ripe for consideration at the trial phase when the fact finder will weigh evidence and assess credibility. Even at the summary judgment stage, this reasoning would likely be unpersuasive alone for judgment as a matter of law. At the infancy of this Action, the only requirement is to plead sufficient facts to support the imputation of liability to Newmark. Plaintiff has accurately done this.

## IV.   Plaintiff Sufficiently Pleaded Facts to Establish a *Prima Facie* Case of Unlawful Retaliation.

Defendants' challenge Plaintiff's presentment of her claims of unlawful retaliation however this argument also fails.  In order to establish a prima facie case of unlawful retaliation under Title VII and the NYSHRL, a plaintiff must show: (1) she participated in a protected activity;

(2) defendant was aware of the protected activity; (3) the plaintiff suffered an adverse employment action; and (4) a causal connection exists between the protected activity and the adverse employment action.  *See Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 844 (2d Cir. 2013).

Defendants do not seem to dispute the first two elements of Plaintiff's retaliation claim since it is axiomatic that Plaintiff plead she participated in a protected activity and that Defendants were aware of the protected activity (Comp. ¶ 104-112).  Instead Defendants argue that Plaintiff's claims are deficient because she has not plead that the adverse employment action was based on the protected activity or that Defendants took any action against her because of her complaint. Defendants arguments are wholly deficient. Their brief is devoid of any binding or persuasive authority to support their position. Moreover, it bears repeating that Plaintiff does not need to prove her retaliation claims at the pleading stage or the summary judgment phase.

The temporal proximity between the protected activity and the adverse employment action has historically been used to support the causation element of a retaliation claim.  Courts have found that a close temporal relationship between a Plaintiff's participation in a protected activity and an employer's adverse action is alone sufficient to establish causation, even without direct evidence in support. See *White v. Department of Correctional Services,* 2011 WL 4527320, 10 (S.D.N.Y. 2011)("a causal connection may be established … by showing that the protected activity was followed closely in time by the adverse action or by other circumstantial evidence."); *Hill v. Citibank Corp.,* 312 F.Supp.2d 464, 480 (S.D.N.Y. 2004)(the passage of approximately <u>one month</u> between the protected activity and the retaliation is a sufficiently short period of time for a reasonable jury to determine that the two events were causally connected); *Parrish v. Sollecito*, 258 F.Supp.2d 264, 269 (S.D.N.Y. 2003)(a rational jury could find a sufficient causal connection between protected activity and termination which was two to <u>three months</u> later);

*Scheiner v. N.Y.C. Health & Hosps.,* 152 F.Supp.2d 487, 497 (S.D.N.Y. 2001) (temporal proximity of <u>one month</u> between protected activity and adverse action supported allegation of causal connection sufficient to survive summary judgment); *Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 769 (2d. Cir. 1998) (<u>two months</u> between protected activity and allegedly adverse action sufficient to establish causation); *Summa v. Hofstra Univ.,* 708 F.3d 115, 128 (2d Cir. 2013)(up to a <u>seven month</u> gap between the protected activity and the adverse employment action is "not prohibitively remote"). In the instant case, the time elapsed between these two events was a mere 8 days. (Comp. ¶ 104, 114).

Moreover, Section 8-107(7) of the NYCHRL prohibits employers from "retaliat[ing] or discriminat[ing] in any manner against any person because such person has ... opposed any practice forbidden under this chapter."   N.Y.C. Admin. Code § 8-107(7). The Restoration Act of the NYCHRL amended this section to further provide:

> The retaliation or discrimination complained of under this subdivision **need not** result in an ultimate action with respect to employment, ... or in a materially adverse change in the terms and conditions of employment, ... provided, however, that the retaliatory or discriminatory act or acts complained of must be reasonably likely to deter a person from engaging in protected activity.

Restoration Act § 3 (amending N.Y.C. Admin. Code § 8-107(7) (emphasis added)).

Thus, to prevail on a retaliation claim under the NYCHRL, a plaintiff must show that he took an action opposing his employer's discrimination, and that, as a result, "the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 112 (2d Cir. 2013) (citing *Williams v. New York City Hous. Auth.*, 872 N.Y.S.2d 27, 33-34 (N.Y. App. Div. 2009)). This is a much lower standard than what is required under Title VII and NYSHRL.

19

Here, Plaintiff plead that eight days after her complaint of discrimination on November 28, 2017, she was terminated.  Given the temporal proximity, it is clear that her termination was a consequence of her complaint of discrimination. Moreover, any proffered reason of pretext by Defendants fail and the chronology of the events here highlight this point.  Plaintiff was issued a written warning on November 21, 2017 (Comp. ¶ 92); however, she was not terminated on this date.  Plaintiff then complained of the sexual harassment during two separate meetings on November 28, 2017 and again on November 30, 2017.  (Comp. ¶ 104-113). During the November 28, 2017 meeting, Ms. Davis told Plaintiff that she would talk to legal about where Plaintiff could be reassigned.  (Comp. ¶ 107).  During the November 30, 2017 meeting, there were further talks between Ms. Davis and Plaintiff about Plaintiff's reassignment.  (Comp. ¶ 112).   Plaintiff was then terminated on December 6, 2017.  (Comp. ¶ 114).  Suspiciously, Plaintiff was not terminated after her November 21, 2017 warning and was instead only terminated *after* she complained about the discrimination. "Under the NYCHRL's mixed-motive framework, a "plaintiff should prevail in an action under the NYCHRL if he or she proves that unlawful discrimination was one of the motivating factors, even if it was not the sole motivating factor, for an adverse employment decision." *Lynch v. New York State Urban Dev. Corp.*, 2018 U.S. Dist. LEXIS 136675, *30 (E.D.N.Y 2018).

Based on the foregoing, it is submitted that Plaintiff has satisfied the pleading requirement to satisfy that (1) Plaintiff participated in a protected activity; (2) Defendants were aware of the protected activity; (3) an act or acts occurred which are reasonably likely to deter a person from engaging in a protected activity; and (4) a causal connection exists between the protected activity and the act or acts which cause deterrence.

**V.      Plaintiff's Aiding and Abetting Claims for the NYCHRL and NYSHRL.**

Under the NYCHRL, an individual can be held personally liable for aiding, abetting, inciting, compelling or coercing the "doing of any of the acts forbidden [thereunder], or attempt[ing] to do so." N.Y.C. Admin. Code § 8-107(6). Plaintiff pleaded that Defendant Roth was the person responsible for perpetrating the sexual harassment; thus, he can be held individually liable as an aider and abettor since he "is viewed as aiding and abetting the employer's violation." *Perks v. Town of Huntington*, 251 F. Supp. 2d 1143, 1160 (E.D.N.Y. 2003). In *Schiano v. Quality Payroll Systems, Inc.*, 445 F.3d 597, 609-10 (2d Cir. 2006), the Second Circuit allowed the plaintiff's aiding and abetting claim against her supervisor to proceed even though the supervisor was the sole contributor to the alleged hostile work environment. *See also Rodriguez v. Express World Wide, LLC*, No. 12 CV 4572 (RJD)(RML), 2014 U.S. Dist. LEXIS 47978, at *13-14, (E.D.N.Y. Jan. 16, 2014) (found liability as an aider and abettor under the NYCHRL, even though the individual defendant was the sole employee alleged to have engaged in discriminatory conduct); *Lyman*, 2014 U.S. Dist. LEXIS 95492, at *63 (NYCHRL permitted aider and abettor liability against individual defendant for aiding and abetting his own discriminatory acts); *Salvatore v. KLM Royal Dutch Airlines*, No. CIV.A.98-2450-LAP, 1999 U.S. Dist. LEXIS 15551, at *8 (S.D.N.Y Sep. 30, 1999) (permitting an aider and abettor claim to stand against sole employee who participated in discriminatory conduct). Thus, the fact that Defendant Ranalli's conduct "forms the basis of the alleged discrimination is not reason to dismiss the aiding and abetting claims asserted against him." *Henry-Offor*, 2012 U.S. Dist. LEXIS 84817, at *17-18, fn 7.

Thus, the Court should not dismiss Plaintiff's NYCHRL aider-and-abettor claim against Defendant Roth. However, even if the Court decides to dismiss Plaintiff's aider-and-abettor cause of action, Defendant Roth should be held directly liable for his discriminatory acts against Plaintiff

21

based under N.Y.C. Admin. Code § 8-107(1)(a), which provides for direct liability for "an employer or an employee or agent thereof" who engages in discrimination." Id (emphasis added). In *Feingold v. New York,* the Second Circuit held that under the NYCHRL, individuals are subject to direct liability for their discriminatory acts.  366 F.3d 138, 158-159 (2d Cir. N.Y. 2004); *also see Gorman v. Covidien, LLC, 13* Civ. 6486 (KPF), 2015 U.S. Dist. LEXIS 156689, at *37 (S.D.N.Y Nov. 19, 2015).

"The NYSRL states that it shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under" the statute. *Feingold v. New York*, 366 F.3d 138, 157058 (2d Cir 2004). "[A]n individual defendant may be held liable under the aiding and abetting provision of the NYSHRL if he "actually participates in the conduct giving rise to a discrimination claim." *Rojas v. Roman Catholic Diocese of Rochester,* 660 F.3d 98, 107 (2d Cir. 2011).  Similar to above, Plaintiff has stated a claim for aiding and abetting liability against Defendant Roth since Defendant Roth himself participated in the sexual harassment and played a part in Plaintiff's termination.

Defendant also argues that Plaintiff's aiding and abetting cause of action under the NYHSLR should be dismissed because Plaintiff has not plead that Roth has any "ownership interest" in Newmark nor the power to unilaterally terminate Plaintiff's employment.  This argument is blatantly incorrect.  Plaintiff plead that Defendant Roth was Plaintiff's supervisor and or had supervisory authority over Plaintiff such that he had the authority to hire, fire, or affect the terms and conditions of Plaintiff's employment. (Comp. ¶ 12).  Moreover, under both the NYSHRL and the NYCHRL, aiding and abetting liability may be found where the employee has no supervisory or decision-making function. *Malena v. Victoria's Secret Direct*, LLC, 886

22

F.Supp.2d 349, 367 (S.D.N.Y. 2012).  As such, Plaintiff's aider and abettor claims should not be dismissed.

## VI.    The Court Should Exercise Supplemental Jurisdiction Over any Remaining Claims.

Assuming *arguendo*, that Plaintiff's federal claims will not survive, the Court should retain supplemental jurisdiction over Plaintiff's NYCHRL claims.  The exercise of supplemental jurisdiction over non-federal claims is governed by 28 U.S.C. § 1367.  *Houston v. Fidelity*, 1997 U.S. Dist. LEXIS 2366, *26 (S.D.N.Y. Mar. 4, 1997).  In addition, the "decision to exercise supplemental jurisdiction over state law claims, once the claims over which the district court had original jurisdiction has been dismissed 'is within the sound discretion of the district court.'" *Silverman v. Miranda*, 116 F. Supp. 3d 289, 300 (S.D.N.Y. 2015) (citation omitted).  The Court must reassess "its jurisdiction over the case by considering several related factors—judicial economy, convenience, fairness, and comity."  *Id.*, at 300 (citation omitted).  The Second Circuit has upheld the exercise of supplemental jurisdiction where "state law claims are 'analytically identical' to the federal claims."  *Id.*, at 300 (citation omitted).

Plaintiff respectfully requests that should Plaintiff's federal claims be dismissed, the Court retain supplemental jurisdiction, given that the Court is not only uniquely familiar with the underlying facts, but both the Title VII claims and the NYSHRL and NYCHRL claims are "analytically identical" to each other. This can be seen through the similar standards that these claims are reviewed under, as explained throughout this memorandum.

*CONCLUSION*

For the foregoing reasons, Plaintiff respectfully submits that Defendants' respective motion should be denied in its entirety.

Dated: New York, New York
        November 16, 2018.

**PHILLIPS & ASSOCIATES,
ATTORNEYS AT LAW, PLLC**

By:        /s/
        Marjorie Mesidor, Esq.
        Brittany A. Stevens, Esq.
        *Attorneys for Plaintiff*
        45 Broadway, Suite 620
        New York, New York 10006
        (212) 248-7431
        mmesidor@tpglaws.com
        bstevens@tpglaws.com
