UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK


USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: SEP 1 6 2019

Jeannie Holohan,

            Plaintiff,

—v—

Newmark & Company Real Estate, Inc. *et al.*,

            Defendants.

18-CV-6275 (AJN)

MEMORANDUM
AND ORDER

ALISON J. NATHAN, District Judge:

    Plaintiff Jeannie Holohan brings this action against her former employer Newmark & Company Real Estate, Inc. ("Newmark"), and Merrill Roth in his individual capacity (together, "Defendants"), alleging that they discriminated against her on the basis of gender by subjecting her to sexual harassment and then unlawfully retaliated when she complained of the harassment. Holohan asserts claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, the New York State Human Rights Law ("NYSHRL), N.Y. Exec. Law § 290 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107, *et seq.* Before the Court is Defendants' motion to dismiss the Complaint in its entirety for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 17. For the reasons articulated below, Defendants' motion is GRANTED in part and DENIED in part.

**I.    Background**

    The following facts are drawn from the Complaint and assumed to be true for purposes of this motion to dismiss.

    In November 2016, Jeannie Holohan was hired by Defendant Newmark as a temporary employee and in March 2017, was hired on a permanent basis. Complaint ("Compl."), Dkt. No.

1, ¶¶ 14-15. Merrill Roth was one of her supervisors during her employment at Newmark. *Id.* ¶ 12. Holohan alleges that Roth sexually harassed her beginning in June 2017.

The first incident allegedly occurred in early June. After Holohan left a notebook in Roth's office, Roth emailed her: "U left your pad in my office Tuesday. Is there a reward :-)?" Holohan responded: "Not a bounty :) Funny!" *Id.* ¶ 18. Holohan contends that Roth's email was a sexually suggestive comment. *Id.* ¶ 19. Later that month, Holohan alleges that she was concerned about whether her outfit for the day complied with the office dress code. When Roth heard of Holohan's concerns, he allegedly asked her to come into his office, "looked her up and down" and "suggestively" stated "I have no problem with what I see." *Id.* ¶ 22. Holohan alleges that around the end of July 2017 and the beginning of August 2017, Roth required her to sit next to him while reviewing a presentation and on one occasion intentionally leaned in towards plaintiff as he reached for items on his desk. *Id.* ¶ 29. Around the same time, Holohan alleges that after she corrected Roth on an error, he made the comment, "you think you're so smart, don't you? I wonder what else you are good at?" *Id.* ¶ 31.

Around August 8, 2017, Holohan alleges the most serious incident occured. When she was reviewing a project with Roth, she claims that Roth's hand brushed against her thigh and that she moved away from him in response. *Id.* ¶ 33. She further pleads that Roth leaned in and stated: "You know I'm not a sexual monster. But my wife thinks I am." *Id.* ¶ 34. Holohan alleges that Roth "inched" closer to her and that she made up an excuse in order to leave. *Id.* ¶ 36. As she did, Holohan claims Roth said, "you know I understand women well." *Id.* ¶ 37. Shortly after this incident, Holohan says that she began to be unfairly criticized for her work, both by Roth as well as by other supervisors. At one point, later in August, Holohan alleges that Roth invaded her personal space and that she moved her chair in such a manner as to force him to move. *Id.* ¶ 49. After Holohan was criticized for her performance on an assignment for Roth by another supervisor, Holohan claims that she met with Roth and that Roth stated, "I always know how to maneuver to my favor." *Id.* ¶ 60.

2

Holohan states that she continued to be unfairly criticized for her job performance, especially by Roth, but by others as well. *Id.* ¶¶ 64-90. On or around November 21, 2017, Holohan claims that she had a meeting with Roth and two other supervisors, where she was read a written warning, authored by Roth. *Id.* ¶¶ 91-92. The warning criticized Holohan for her job performance on an important project, her attitude, insubordination, and for getting into an altercation with Roth . *Id.* ¶¶ 92-93. Roth was allegedly smirking while the warning was read. *Id.* ¶ 94. Around November 27, Holohan states that she contacted one supervisor and two human resources generalists about being unable to come into work because of the hostile work environment. *Id.* ¶ 103. At the end of November, Holohan claims that she met with the two human resources generalists, and explained her claims that Roth sexually harassed her. *Id.* ¶¶ 104-110. She explained at this meeting that she believed the environment was abusive because she was not acquiescing to Roth's conduct. *Id.* ¶ 110. The human resources generalists allegedly informed Holohan at this meeting that neither Roth nor her other supervisors would be involved in the process going forward. *Id.* ¶ 108. At the end of the second meeting, Holohan claims that she initially asked to be transferred to another department, but then took this back because she believed that the work environment would not be any different. *Id.* ¶ 112. On December 6, 2017, Holohan states that she "was terminated from her position in retaliation for complaining of sexual harassment." *Id.* ¶ 114.

Holohan received a right to sue letter from the EEOC on June 21, 2018. *Id.* ¶ 6. She initiated the instant action on July 11, 2018. Dkt. No. 1.

## II.     Legal Standard

To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff is not required to provide "detailed factual allegations" in the complaint but must assert "more than labels and conclusions." *Twombly*, 550 U.S. at 555. Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*

3

The Court must accept the allegations in the complaint as true and draw all reasonable inferences in the non-movant's favor. *ATSI Communs, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

## III. Discussion

### A. Title VII Hostile Work Environment Sexual Harassment Claim Against Newmark

In order to establish a claim for hostile work environment under Title VII, a plaintiff must show two things. First a plaintiff must demonstrate that "the workplace is permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Howley v. Town of Stratford*, 217 F.3d 141, 153 (2d Cir. 2000) (quotations omitted). Second, a plaintiff must show that "a specific basis exists for imputing the conduct that created the hostile environment to the employer." *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997). Furthermore, "in order to establish a sex-based hostile work environment under Title VII, a plaintiff must demonstrate that the conduct occurred because of her sex." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (internal quotation marks and citation omitted).

In considering whether a plaintiff has met her burden as to the sufficiency of the purported harassment, "courts should 'examin[e] the totality of the circumstances, including: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the victim's [job] performance.'" *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2012) (alterations in original) (quoting *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 745 (2d Cir. 2003)). "The sufficiency of a hostile work environment claim is subject to both subjective and objective measurement: the plaintiff must demonstrate that she personally considered the environment hostile, and that the environment rose to some objective level of hostility." *Leibovitz v. N.Y.C. Transit. Auth.*, 252 F.3d 179, 188 (2d Cir. 2001). Additionally,

4

"[a]lthough a continuing pattern of hostile or abusive behavior is ordinarily required to establish a hostile environment, a single instance can suffice when it is sufficiently egregious." *Ferris v. Delta Air Lines, Inc.*, 277 F.3d 128, 136 (2d Cir. 2001).

The Court agrees with Defendants that even if Plaintiff's allegations are accepted as true, they do not describe an actionably hostile work environment. First, Plaintiff does not claim that the conduct was frequent. *See Rivera*, 743 F.3d at 20. Rather, the alleged incidents of sexual harassment are alleged to have occurred over a period of several months, with roughly two to three incidents per month. *See Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 768 (2d Cir. 1998) ("As a general matter, isolated remarks or occasional episodes of harassment will not merit relief under Title VII") (quotation omitted), *abrogated in part on other grounds by National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002); *Robinson v. Purcell Constr. Corp.*, 859 F. Supp. 2d 245, 255 (N.D.N.Y. 2012) (describing five gender based comments over two months as "sporadic offensive utterances").

Nor is the conduct set out in the complaint "sufficiently severe to overcome its lack of pervasiveness." *Mormol v. Costco Wholesale Corp.*, 364 F.3d 54, 59 (2d Cir. 2004). Plaintiff does not allege that she was "physically threaten[ed] or humiliat[ed]." *Rivera*, 743 F.3d at 20 (quotation omitted). Plaintiff also has not claimed that the instances of sexual harassment "unreasonably interfere[d] with the [plaintiff's] [job] performance.[1] *Id.* (quotation omitted). The complaint alleges that plaintiff suffered occasional sexually suggestive "offensive utterances," *id.* (quotation omitted), two invasions of personal space, and, one instance of brief offensive touching, over several months. Two of these incidents are specifically identified in the complaint as "sexual advances." Compl. ¶¶ 32, 35. Taken together, and even with every inference drawn in favor of the Plaintiff, this conduct is not severe or pervasive enough to "alter the conditions" of Plaintiff's employment. *See Velazquez v. City of New York*, No. 08-cv-2159,

---

[1] Plaintiff does allege that actions taken in retaliation to her opposition to sexual harassment did in fact interfere with her job performance. *See, e.g.*, Compl. ¶ 106. As discussed below, Plaintiff has stated a retaliation claim under Title VII, the NYSHRL, and the NYCHRL.

5

2010 U.S. Dist. LEXIS 152609, at *16-21 (S.D.N.Y. Aug. 19, 2010) (holding that roughly eleven inappropriate comments over sixth months and one instance of unwanted touching were not sufficiently severe and pervasive), *aff'd*, 468 Fed. Appx. 22 (2d Cir. 2012); *Gregg v. New York State Dep't of Taxation & Fin.*, No. 97-cv-1408, 1999 U.S. Dist. LEXIS 5415, at *35-36 (S.D.N.Y. Apr. 15, 1999) (holding that "10 to 15 allegedly inappropriate conversations . . . four alleged instances of offensive touching and . . . repeated invitations to meals, drinks and the like" were not sufficiently severe and pervasive); *see also Quinn*, 159 F.3d at 768 (granting summary judgment for defendant where supervisor told plaintiff that she had been "voted the 'sleekest ass' in the office" and deliberately touched her breasts with papers that he was holding); *Anderson v. Davis Polk & Wardwell LLP*, 850 F. Supp. 2d 392, 404 (S.D.N.Y. 2012) (holding that "occasions" where supervisor would "place her vagina literally on [plaintiff's] left shoulder or inches from my face" or otherwise invade plaintiff's personal space were not sufficiently severe or pervasive enough to be actionable).

      Plaintiff relies on *Batten v. Global Contact Services, LLC*, No. 15-cv-2382, 2018 U.S. Dist. LEXIS 105327 (E.D.N.Y. June 21, 2018), for the proposition that a single instance of unwanted touching can meet the severe or pervasive standard. That reliance is misplaced. In *Batten*, the plaintiff was subjected to a combination of "a squeeze and a hug" that lasted for more than ten seconds. *Id.* at *3. During this incident, the defendant "locked his arms around Batten's body underneath [her] breast" in such a way as to make "contact with Batten's breasts." *Id.* (quotation marks and citations omitted). The defendant then "lifted [Batten] and squeezed," while "press[ing] [his cheek] against hers, his chin over her shoulder." *Id.* The plaintiff in *Batten* described it as "a "sexually forceful grope" which "sexually violat[ed]" and "physically threaten[ed]" her. *Id.* at *14. The court accordingly held that a reasonable juror could find that the conduct was both humiliating and physically threatening. *Id.* The incident in *Batten* was significantly more severe than the sum of the conduct in this case. None of Roth's alleged behavior could plausibly be described as equivalent to a "forceful grope" or other sexually

6

violating behavior. Likewise, as discussed above, Roth is not alleged to have acted in a physically threatening or humiliating manner.

Plaintiff's claim for Title VII sex discrimination must be dismissed.

### B.   NYSHRL Hostile Environment Sexual Harassment Claim Against Newmark and Roth

NYSHRL has the same standard as Title VII for claims of a hostile work environment. *See Berrie v. Bd. of Educ. of the Port Chester-Rye Union Free Sch. Dist.*, 750 Fed. Appx. 41, 47 (2d Cir. 2018); *Leopold v. Baccarat, Inc.*, 174 F.3d 261, 264 n.1 (2d Cir. 1999). Because Plaintiff fails to state a claim for relief under Title VII, her claim under NYSHRL must also be dismissed.

### C.   NYCHRL Sexual Harassment Claim Against Newmark and Roth

Unlike the NYSHRL, the standard for actionable sexual harassment under the NYCHRL, N.Y.C. Admin. Code § 8-107(1), is significantly lower than Title VII's. A plaintiff must only show that she was treated "treated 'less well' . . . because of her gender, and that the conduct complained of was neither petty nor trivial." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 113 (2d Cir. 2013) (quoting *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 39, 41 (N.Y. App. Div. 2009)). Whether a statement or incident is "isolated" is "irrelevant" under the NYCHRL. *Hernandez v Kaisman*, 957 N.Y.S.2d 53, 59 (N.Y. App. Div. 2012). In some circumstances, even a single comment may be actionable. *See Williams*, 872 NY.S. 2d at 41 n.30. As the alleged recipient of sexually suggestive comments, two invasions of personal space, and two alleged sexual advances, Plaintiff has pled that she was treated "less well" due to her gender. And it is certainly plausible that they were neither petty nor trivial. *See Milhalik*, 715 F.3d at 111 (noting that "the employer has the burden of proving the conduct's triviality under the NYCHRL"); *Hernandez*, 957 N.Y.S.2d at 59 (holding that "mildly offensive sexual" emails

7

and "isolated" comments "objectifying women's bodies and exposing them to sexual ridicule" were actionable under the NYCHRL).[2]

Plaintiff has also alleged facts that state a clear basis for imputing liability under the NYCHRL to Newmark, as well as to Roth, individually. As to Newmark, the relevant provision states that employers are liable for the conduct of an employee or agent, *inter alia*, when the "employee or agent exercised managerial or supervisory responsibility." N.Y.C. Administrative Code § 8-107(13)(b)(1); *see* Compl. ¶ 12 ("That at all times relevant hereto . . . Defendant Roth was Plaintiff's supervisor . . . . [and] had the authority to hire, fire, or affect the terms of Plaintiff's employment"). For Roth, Section 8-107(1)(a) of NYCHRL makes it unlawful "'for an employer or an employee or agent thereof' to create a hostile work environment." *Dillon v. Ned Mgmt.*, 85 F. Supp. 3d 639, 658 (E.D.N.Y. 2015) (quoting N.Y.C. Admin. Code § 8-107(1)(a)).

### D.  Title VII, NYSHRL, and NYCHRL Retaliation Claims Against Newmark

To establish a prima facie claim of retaliation under Title VII and the NYSHRL, a Plaintiff must prove that "(1) she engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (quoting *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012)). The standard for a prima facie NYCHRL retaliation claim is the same, except for that the plaintiff must only show conduct "reasonably likely to deter a person from engaging in protected activity" as opposed to a materially adverse action. *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 723 (2d Cir. 2010) (quoting *Williams*, 872 N.Y.S.2d at 34). Plaintiff's allegations regarding her meetings with human resources, followed by her termination a week later are more than sufficient to state a

---

[2] The Court retains supplemental jurisdiction over the NYCHRL harassment claim, because Plaintiff has stated a claim under Title VII for retaliation. When a court has federal question jurisdiction over a claim of retaliation, supplemental jurisdiction extends to claims arising out of the initial conduct that Plaintiff claimed was discriminatory. *Treglia v. Town of Manlius*, 313 F.3d 713, 723 (2d Cir. 2002).

prima facie case. With regard to the first two steps, Plaintiff has pled that she engaged in protected activity and that the employer was aware of the activity.

Plaintiff has also pled that she suffered a materially adverse action. She alleged that one week after meeting with human resources about Roth, she "was terminated from her position in retaliation for complaining of sexual harassment." Compl. ¶ 114. Defendants point to the Complaint's use of the passive voice to argue that Plaintiff never actually alleged that she was involuntarily terminated by Newmark. *See* Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment, Dkt. No. 23, at 19-20. However, at the pleadings stage, the Court is obliged to draw all inferences in favor of the plaintiff. *ATSI Communs, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). To the extent there is any ambiguity, the Court interprets the complaint as alleging involuntary termination. Likewise, the Court finds that Plaintiff has plausibly alleged that there was a causal connection between the termination and her complaints about Roth's behavior. *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015) ("A retaliatory purpose can be shown indirectly by timing: protected activity followed closely in time by adverse employment action."); *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) ("Though this Court has not drawn a bright line defining, for the purposes of a prima facie case, the outer limits beyond which a temporal relationship is too attenuated to establish causation, we have previously held that five months is not too long to find the causal relationship.").

Plaintiff has therefore stated claims of retaliation against Newmark under Title VII, the NYSHRL, and the NYCHRL.

### E.    Defendant Roth's Individual Liability for Retaliation

Plaintiff seeks to hold Defendant Roth individually liable under the NYSHRL and the NYCHRL for retaliation. Individuals can be held liable under the NYSHRL, N.Y. Executive Law § 296(6), and NYCHRL, N.Y.C. Administrative Code § 8-107(6), if they "aid" or "abet" unlawful employment discrimination by "actually participat[ing]" in the unlawful conduct. *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995); *see also Feingold v. New York*, 366

F.3d 138, 158 (2d Cir. 2004) (noting that NYSHRL and NYCHRL aiding and abetting claims are governed by the "same standards of analysis"). Furthermore, an individual can be held directly liable under the NYSHRL's and NYCHRL's retaliation provisions also under an "actually participates" standard. *Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 366 (S.D.N.Y. 2012); *see* N.Y. Executive Law § 296(7) (extending liability for retaliation claims to "any person engaged in any activity to which this section applies"); N.Y.C. Administrative Code § 8-107(7) (similar language). Plaintiff has pled that Roth was her "supervisor" and that he "had the authority to hire" or "fire" Plaintiff. Compl. ¶ 12. She also alleged that he that had given her a negative performance review that preceded her termination. These allegations give rise plausible inferences that Roth participated in legally actionable retaliatory conduct against Plaintiff. Accordingly, the NYSHRL and NYCHRL retaliations claims against Roth, as well as the NYSHRL and NYCHRL aiding and abetting claims against Roth may go forward.

## IV.   Conclusion

For the reasons articulated above, Defendants' motion to dismiss is GRANTED with respect to Plaintiff's Title VII and NYSHRL sex discrimination claims, but is DENIED as to all other claims. The Court will reschedule the Initial Pretrial Conference by a separate order.

This resolves Dkt. No. 17.

SO ORDERED.

Dated: September 16, 2019
New York, New York

_____
ALISON J. NATHAN
United States District Judge